This Opinion is a
Precedent of the TTAB

Mailed:
December 28, 2012

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

Trademark Trial and Appeal Board

_____

*In re Supreme Steel Framing System Association, Inc.*

_____

Serial No. 77859631

_____

Mark W. Hendricksen of Wells St. John P.S. for Supreme Steel Framing System Association, Inc.

Gina M. Fink, Trademark Examining Attorney, Law Office 109 (Dan Vavonese, Managing Attorney).

_____

Before Kuhlke, Shaw, and Hightower, Administrative Trademark Judges.

Opinion by Hightower, Administrative Trademark Judge:

On October 28, 2009, applicant Supreme Steel Framing System Association, Inc. filed an application to register on the Principal Register the mark SSFSA CERTIFIED CODE COMPLIANT, in standard character form, for services ultimately identified as "Testing, analysis and evaluation of the goods and services of others for the purposes of certification in the field of the use of cold-formed steel tracks and steel framing studs," in Class 42. The date of first use of the mark anywhere and in commerce was claimed to be at least as early as October 5, 2009.

Serial No. 77859631

In response to the examining attorney's requirement, applicant submitted a disclaimer of the phrase CERTIFIED CODE COMPLIANT.[1]

In support of the application, applicant submitted the specimen of use shown below, described as a "Label applied to certified steel products":



Applicant also submitted as a substitute specimen a brochure produced by a licensee, SCAFCO Corp., the most relevant pages of which are reproduced below:

 

---

[1] We note that the disclaimer was entered with the word "compliant" misspelled as "complaint." Because it is clear that both the required and provided disclaimer should be for the word "compliant," the Board has corrected the Office records.

The examining attorney has refused registration under Sections 1(a)(1) and 45 of the Trademark Act, 15 U.S.C. §§ 1(a)(1), 45, on the "closely related" grounds that (1) applicant seeks registration of more than one mark, and (2) the mark differs on the drawing page and specimens of use under Sections 1 and 45 of the Trademark Act, 15 U.S.C. §§ 1, 45. Applicant timely appealed, and the appeal has been fully briefed.

## Analysis

We turn first to the examining attorney's refusal on the basis that the specimens are unacceptable because, as depicted, applicant is seeking to register more than one mark. We note at the outset that this case presents some conceptual complexity because it is applicant's specimens and not the drawing itself which form the basis for the final refusal. Nonetheless, we find that the facts here are directly on point with other cases in which the Board has considered whether an applicant is seeking to register multiple marks as illustrated by its specimen.

A.    Refusal on the Basis that Applicant Seeks To Register Multiple Marks

The Trademark Act and the rules promulgated thereunder permit registration of only one mark per application. Trademark Act Section (1)(a)(1), 15 U.S.C. § 1051(a)(1); 37 C.F.R. § 2.52; *In re Int'l Flavors & Fragrances, Inc.*, 183 F.3d 1361, 1366, 51 USPQ2d 1513, 1516 (Fed. Cir. 1999); *In re Hayes*, 62 USPQ2d 1443, 1445-46 (TTAB 2002). There is no limitation on the number of trademarks that may appear on a specimen and serve to identify the source of the product. *See* 1 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 7.6 (4th ed. 2012). However, an applied-for mark combining separate elements is

3

registrable only if it is a single unitary mark engendering a unique and distinct commercial impression. *In re Walker-Home Petroleum, Inc.*, 229 USPQ 773, 775 (TTAB 1985).

The question presented is whether the specimens of use accurately depict a single, unitary mark engendering a unique and distinct commercial impression, or whether the specimens depict two separate marks. *See In re Jordan Industries, Inc.*, 210 USPQ 158, 159 (TTAB 1980); *see also In re Walker-Home Petroleum*, 229 USPQ at 775-76. The issue is resolved by comparing the specimens to the drawing, and our analysis is necessarily subjective. *See In re Jordan Industries*, 210 USPQ at 159. The specimens of use presumably show how the average purchaser will encounter the mark under normal marketing conditions and therefore suggest the likely perception of the average purchaser to this display of the mark. *In re Magic Muffler Service, Inc.*, 184 USPQ 125, 126 (TTAB 1974). When "the specimens disclose that applicant seeks to register two marks in one application, refusal of registration is proper." *In re Audi NSU Auto Union AG*, 197 USPQ 649, 651 (TTAB 1977).

Applicant focuses its arguments on the color label initially submitted as a specimen (shown below) rather than on the brochure submitted as a substitute specimen; in any event, both specimens appear to make the same presentation, as follows:



Applicant contends that, although the specimen does depict a composite mark, it properly shows SSFSA CERTIFIED CODE COMPLIANT – the mark depicted in the drawing – and gives one commercial impression to the viewer. "The Applicant submits that as you read <u>the large and similarly sized fonts</u> from left to right in the English sense, and then downward in the English reading sense, the specimen shows one single trademark as required, i.e., 'SSFSA CERTIFIED CODE COMPLIANT.'" Reply Brief, at 2.

The examining attorney, in contrast, argues that elements of the mark on the drawing page appear as two separate marks on the specimen, with "SSFSA" in a different "carrier" from the wording "CERTIFIED CODE COMPLIANT." Particularly when considering the color scheme, the examining attorney argues that SSFSA SUPREME STEEL FRAMING SYSTEM ASSOCIATION is presented in a separate carrier and could be its own mark, as could CERTIFIED CODE COMPLIANT.

We have carefully considered applicant's arguments and evidence, but comparing the specimens to the drawing, we must agree with the examining attorney. As they are presented on these specimens, "SSFSA" and "CERTIFIED CODE COMPLIANT" would not be perceived as components of a single unitary mark, but rather as two separate marks.

The terms "SSFSA" and "CERTIFIED CODE COMPLIANT" as they appear in the specimens do not engender one distinct commercial impression. SSFSA SUPREME STEEL FRAMING SYSTEM ASSOCIATION appears horizontally in its own small box, outlined in black and with a white background, containing a sizable design element. CERTIFIED CODE COMPLIANT is presented in large type in the center of the specimen, with "CERTIFIED" and "COMPLIANT" curved inside a gold circle and "CODE" on a red-bordered white ribbon across the center. The blue-and-gray design element in the white rectangle, below and encapsulating "SSFSA," and the wording "SUPREME STEEL FRAMING SYSTEM ASSOCIATION" intervene between the two elements "SSFSA" and "CERTIFIED CODE COMPLIANT."

This spatially separate and distinct manner of presentation of these elements creates separate commercial impressions for SSFSA and CERTIFIED CODE COMPLIANT. Based on the manner in which they are depicted in the specimens, purchasers would be more likely to perceive these two elements as two different marks – SSFSA SUPREME STEEL FRAMING SYSTEM ASSOCIATION and design on the one hand, and CERTIFIED CODE COMPLIANT and design on the other – rather than the single mark shown on the drawing page.

Our analysis comports with other cases in which the Board has addressed a similar question. For example, in *Jordan Industries*, we affirmed the refusal to register JORDAN JIF-LOK (stylized), finding that the presentation of the terms in the following specimen did not make a unitary impression:



Instead, the Board found that

> the manner in which "JORDAN" is presented separates the commercial impression created by that name from the impression created by "JIF-LOK," especially when the latter is seen, as it naturally would be observed by the average customer, as part of the complete expression "JIF-LOK 'MIRACLE' FASTENER."

210 USPQ at 159.

The Board reached similar results where specimens did not display unitary marks in *In re Audi NSU Auto Union* (refusing registration of AUDI FOX and design) and *In re Magic Muffler Service, Inc.*, 184 USPQ 125 (TTAB 1974) (refusing registration of the stylized mark MAGIC MUFFLER SERVICE).

On the other hand, BLUE MOUNTAIN KITTY O'S, presented as follows:



was held to be a unitary, composite mark in *New England Fish Co. v. Hervin Co.*, 179 USPQ 743, 745 (TTAB 1973), *aff'd*, 511 F.2d 562, 184 USPQ 817 (C.C.P.A. 1975). The specimens depicted the phrase "BLUE MOUNTAIN" in one typeface positioned directly above "KITTY O'S" in a different typeface, with both designations inside a blue rectangular design. *Id.* "There can be no question from this showing that 'BLUE MOUNTAIN' and 'KITTY O'S' are used in such close relationship to one another as to form a single unitary mark and thereby project a single commercial impression and thought." *Id.*

We find the case at hand to be more analogous to *Jordan Industries* than *New England Fish*. The refusal of registration is affirmed on the basis that applicant is seeking to register multiple marks, as displayed in its specimen.

B.    Refusal on the Basis that the Mark Differs in the Drawing and Specimen

Because we have found that the drawing presents a single composite mark while the specimen does not, it necessarily follows that the mark on the drawing differs from the multiple marks on the specimen. We therefore also affirm the refusal of registration on the ground that applicant's mark differs in the drawing and the specimen.

*Decision:* The refusal to register is affirmed.