### In re ELECTROLYTE LABORATORIES, INC.

No. 90–1062.

United States Court of Appeals, Federal Circuit.

Sept. 5, 1990.

Timothy J. Martin, Lakewood, Colo., argued, for appellant.

Albin F. Drost, Associate Sol., Office of the Sol., Arlington, Va., argued for the Com'r of Patents and Trademarks. With him on the brief was Fred E. McKelvey, Sol., Woodbridge, Va.

Before NEWMAN, ARCHER, and ALARCON,* Circuit Judges.

PAULINE NEWMAN, Circuit Judge.

We reverse the decision of the Trademark Trial and Appeal Board (TTAB) of the United States Patent and Trademark Office, refusing to register on the Principal Register the following mark of Electrolyte Laboratories, Inc. for a dietary potassium supplement:

CA 5010 (90)–1

## Discussion

The TTAB held that Electrolyte's mark is likely to cause confusion[1] with the follow-

---

* Judge Arthur L. Alarcon, United States Court of Appeals for the Ninth Circuit, sitting by designation.

1. 15 U.S.C. § 1052(d) states:

    No trademark by which the goods of the applicant may be distinguished from the goods of others shall be refused registration on the principal register on account of its nature unless it—

    \*    \*    \*    \*    \*    \*

    (d) Consists of or comprises a mark which so resembles a mark registered in the Patent and Trademark Office or a mark or trade name previously used in the United States by another and not abandoned, as to be likely, when applied to the goods of the applicant, to cause confusion, or to cause mistake, or to deceive. . . .

ing mark for a dietary potassium supplement.

The letter "K" in both marks is the chemical symbol for potassium. "EFF" is said to be an abbreviation of "effervescent". The examining attorney had withdrawn an earlier rejection on the ground that K+ was "merely descriptive", 15 U.S.C. § 1052(e)(1), of the potassium ion, that is, of soluble potassium. However, both sides treat K+ as the symbol of the potassium ion.

■ Determination of likelihood of confusion is reviewed as a question of law. *Kimberly–Clark Corp. v. H. Douglas Enterprises, Ltd.*, 774 F.2d 1144, 1146, 227 USPQ 541, 542 (Fed.Cir.1985). It is necessarily a subjective determination, *In re Burndy Corp.*, 49 CCPA 967, 300 F.2d 938, 940, 133 USPQ 196, 197 (1962), and the effect of a design or style of letters, as any determination of likelihood of confusion, depends on the particular facts. *See generally In re E.I. DuPont de Nemours & Co.*, 476 F.2d 1357, 1361, 177 USPQ 563, 567 (CCPA 1973) (identifying factors that may be relevant). In this case the goods are similar, as are the channels of trade; and the marks have common features. The similarities and dissimilarities between the two marks must be considered, for likelihood of confusion depends on the overall impression of the marks. *Specialty Brands, Inc. v. Coffee Bean Distributors, Inc.*, 748 F.2d 669, 673, 223 USPQ 1281, 1283 (Fed.Cir.1984) (considering the commercial impression of marks applied to similar goods in the same trade channels).

Electrolyte argues that since "K+" is descriptive, that portion of both marks is entitled to little weight in determining their overall effect on the consumer. However, no feature of a mark is ignored, *Massey Junior College, Inc. v. Fashion Institute of Technology*, 492 F.2d 1399, 181 USPQ 272 (CCPA 1974), and appropriate weight is given to the effect of features common to both marks. *In re National Data Corp.*, 753 F.2d 1056, 1058, 224 USPQ 749, 751 (Fed.Cir.1985).

More dominant features will, of course, weigh heavier in the overall impression of a mark. *Giant Foods, Inc. v. Nation's Foodservice, Inc.*, 710 F.2d 1565, 218 USPQ 390 (Fed.Cir.1983). There is no general rule as to whether letters or design will dominate in composite marks; nor is the dominance of letters or design dispositive of the issue. No element of a mark is ignored simply because it is less dominant, or would not have trademark significance if used alone. *See Spice Islands, Inc. v. Frank Tea & Spice Co.*, 505 F.2d 1293, 184 USPQ 35 (CCPA 1974) (improper to ignore portion of composite mark).

■ The TTAB, explaining its holding that confusion was likely, stated that consumers would say "K-plus" and "K-plus-eff" when calling for the products. However, the spoken or vocalizable element of a design mark, taken without the design, need not of itself serve to distinguish the goods. The nature of stylized letter marks is that they partake of both visual and oral indicia, and both must be weighed in the context in which they occur. *See, e.g., Georgia–Pacific Corp. v. Great Plains Bag Co.*, 614 F.2d 757, 760, 204 USPQ 697, 699 (CCPA 1980):

> It must be remembered that [registrant's] trademark consists of highly stylized letters and is therefore in the gray region between pure design marks which cannot be vocalized and word marks which are clearly intended to be.

In *Georgia–Pacific* the court observed that even if the letter portion of a design mark could be vocalized, that was not dispositive of whether there would be likelihood of confusion. A design is viewed, not spoken, and a stylized letter design can not be treated simply as a word mark. *Burndy*, 300 F.2d at 940, 133 USPQ at 197.

■ We conclude that the TTAB erred in its dominant focus on the K+ in both marks, to the substantial exclusion of the other elements of both marks. Electrolyte's mark is a composite of which the design is a significant feature thereof. The EFF in the registrant's mark is also

significant. Although the symbols and abbreviations can be pronounced, they are not identical, and the design of the marks is substantially different. We conclude that Electrolyte's mark, viewed as a whole, serves to distinguish its goods from those of others.

The Board's holding of likelihood of confusion is

REVERSED.