NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2009-1139
(Serial No. 77/001,674)

IN RE NORTHLAND ORGANIC FOODS CORP.

Michael E. Florey, Fish & Richardson P.C., of Minneapolis, Minnesota, for appellant. With him on the brief was Jana L. France.

Raymond T. Chen, Solicitor, Office of the Solicitor, United States Patent and Trademark Office, of Alexandria, Virginia, for the Director of the United States Patent and Trademark Office. With him on the brief were Thomas L. Stoll and Christina J. Hieber, Associate Solicitors.

Appealed from: United States Patent and Trademark Office
Trademark Trial and Appeal Board

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2009-1139
(Serial No. 77/001,674)

IN RE NORTHLAND ORGANIC FOODS CORP.

Appeal from the United States Patent and Trademark Office, Trademark Trial and Appeal Board.

_____

DECIDED: July 8, 2009

_____

Before NEWMAN, CLEVENGER, and BRYSON <u>Circuit Judges.</u>

NEWMAN, <u>Circuit Judge.</u>

Northland Organic Foods Corp. (Northland) seeks registration on the Principal Register of the mark SEED TO PLATE and associated design, for various goods and services. The examining attorney in the United States Patent and Trademark Office (PTO) refused Northland's application on the ground that the mark is likely to be confused with the registered service mark SEED TO PLATE A COMMUNITY PARTNERSHIP IN CARING in International Class 41, Registration No. 3,047,968, issued January 24, 2006 (the '968

mark). The Trademark Trial and Appeal Board (TTAB or Board) upheld the examining attorney's rejection[1], and we <u>affirm</u>.

BACKGROUND

On September 18, 2006, Northland filed trademark application Serial No. 77/001,674 seeking to register the mark SEED TO PLATE and the associated design:



for various goods and services in a number of International Classes. The examining attorney refused registration based on likelihood of confusion for the following classes of goods and services: "books, magazines, newsletters and circulars, all on the subject of information relating to environmentally sound and sustainable agricultural practices and the production of organic and non-GMO [Genetically Modified Organisms] crops; printed recipes distributed individually; and art prints" in International Class 16; "educational information relating to agricultural research namely, research relating to environmentally sound and sustainable agricultural practices and the production of organic and non-GMO crops" in International Class 42; and "educational information relating to agricultural advice namely, advice relating to environmentally sound and sustainable agricultural practices and the production of organic and non-GMO crops" in International Class 44.[2] The examining

_____

[1] <u>In re Northland Organic Foods Corp.</u>, Serial No. 77001674 (TTAB Sept. 29, 2008).

[2] Northland also applied for registration for goods in International Classes 5 and 29. They are not at issue on this appeal. <u>Northland</u>, Serial No. 77001674, Board op. at 3 n.2 ("The refusal to register applied to the goods in International Classes 5 and 29 based

attorney determined that Northland's mark is likely to be confused with the registered '968 mark



for "educational services, namely, conducting classes, seminars and workshops in the field of planting, growing and harvesting crops" in International Class 41, 15 U.S.C. §1052(d).[3] The examining attorney found that the two marks have the same dominant literal element SEED TO PLATE and that the associated designs do not sufficiently distinguish the marks. The examining attorney also found that the two marks have similar potential purchasers including crop growers and farmers and that the marks are likely to have the same general commercial impression on these potential purchasers.

---

on requirement for more definite identifications has been withdrawn. In view thereof, regardless of the outcome regarding the specified goods and services at issue in this appeal, a notice of allowance may be issued for applicant's mark for at least the remaining goods in the application.") (citing Trademark Rule 2.65(a)).

[3]  15 U.S.C. §1052(d) (entitled "Trademarks registrable on principal register; concurrent registration") provides, in relevant part:

> No trademark by which the goods of the applicant may be distinguished from the goods of others shall be refused registration on the principal register on account of its nature unless it—
> * * *
> (d) Consists of or comprises a mark which so resembles a mark registered in the Patent and Trademark Office, or a mark or trade name previously used in the United States by another and not abandoned, as to be likely, when used on or in connection with the goods of the applicant, to cause confusion, or to cause mistake, or to deceive . . . .

The TTAB upheld the examiner's likelihood of confusion determination. The TTAB found that the two marks appear identical in sound, meaning and commercial impression because the phrase SEED TO PLATE is the dominant element in both marks. The TTAB found that the goods and services identified in Northland's application are related to those in the '968 mark based on "several third-party use-based registrations . . . show[ing] that numerous entities have adopted a single mark for books, magazines, educational services, and information services." The TTAB also determined that the subject matter field "planting, growing and harvesting crops" listed for the '968 registered mark encompasses the channels of trade and class of purchasers relevant to Northland's mark.

DISCUSSION

The determination of likelihood of confusion is a question of law based on underlying facts. Specialty Brands, Inc. v. Coffee Bean Distributors, Inc., 748 F.2d 669, 671 (Fed. Cir. 1984). In accordance with the Administrative Procedure Act, the TTAB's legal conclusions are reviewed de novo and factual findings are reviewed on the standard of support by substantial evidence. 5 U.S.C. §706; see, e.g., On-Line Careline Inc. v. American On-Line, Inc., 229 F.3d 1080, 1085 (Fed. Cir. 2000) (applying the Administrative Procedure Act to issues of likelihood of confusion). Likelihood of confusion is conventionally determined by applying the factors set forth in In re E.I. DuPont De Nemours & Co., 476 F.2d 1357, 1361 (CCPA 1973). The marks are compared for similarities "in their entireties as to appearance, sound, connotation, and commercial impression." Id.; see Specialty Brands, 748 F.2d at 672-76 (applying the DuPont factors).

Northland argues that the TTAB erred by focusing only on the phrase SEED TO PLATE in the mark without considering the associated drawing or the commercial

impression created by the entirety of the mark. Northland argues that unlike the '968 mark which has an elaborate design including a tree being tended by a man and a woman planting seeds, the mark at issue contains a simple design of "a soybean sitting on a plate" with very clean lines. Northland argues that confusion is unlikely because a viewer would notice the visual differences between the two marks. Northland argues that while both marks contain the phrase SEED TO PLATE, the TTAB erred by giving no weight to the phrase A COMMUNITY PARTNERSHIP IN CARING in the '968 mark. Northland argues that because the viewer's attention would immediately focus on the design element of the '968 mark rather than the word elements of the mark. Northland argues that the TTAB incorrectly found the phrase SEED TO PLATE to be the dominant phrase in the '968 mark.

Northland also argues that there are sufficient dissimilarities in the commercial impression rendered by the two marks to prevent a likelihood of confusion. As argued by Northland: "the connotation or commercial impression created by the ['968] mark is that one can attend one of registrant's classes, seminars or workshops to learn to grow his or her own food," Appellant Br. at 14, whereas "the connotation and commercial impression created by [Northland's] Mark is that of being able to eat more wholesome food products." Id. at 15.

The PTO argues that the TTAB correctly found that the phrase SEED TO PLATE in large, bold letters across the top of the mark is the dominant element of the '968 mark whereas the phrase COMMUNITY PARTNERSHIP IN CARING is written in smaller letters at the bottom of the design. The PTO states that the TTAB properly considered both marks in their entireties including the associated designs, and found that the similarities outweigh the dissimilarities. The PTO argues that the similarities between the commercial

impressions, i.e., both marks relating to growing crops as food, will be likely to cause confusion because the two marks offer related goods and services with overlapping channels of trade and purchasers.

Trademarks are considered in their entireties, words and design. In re Shell Oil Co., 992 F.2d 1204, 1206 (Fed. Cir. 1993). "Although examining the marks in their entireties, the comparison, for rational reasons, may give more or less weight to a dominant feature of the mark." Herbko Int'l Inc. v. Kappa Books, Inc., 308 F.3d 1156, 1165 (Fed. Cir. 2002). In this case, both marks contain the identical phrase "SEED TO PLATE." The phrase SEED TO PLATE is prominent in each mark, where it is presented in capitalized and bold letters. Although we agree with Northland that the associated drawings are different, in considering the overall impression "it is not proper to dissect a mark; our predecessor court recognized that one feature of a mark may be more significant than other features, and that it is proper to give greater force and effect to the dominant feature." Giant Food, Inc. v. Nation's Foodservice, Inc., 710 F.2d 1565, 1570 (Fed. Cir. 1983). "[T]here is nothing improper in stating that, for rational reasons, more or less weight has been given to a particular feature of a mark, provided the ultimate conclusion rests on consideration of the marks in their entireties." In re Nat'l Data Corp., 753 F.2d 1056, 1058 (Fed. Cir. 1985).

The Board found that the phrase SEED TO PLATE dominates both marks, and that the differences in the associated designs do not diminish their effect of substantial identity as to source, when viewed in their entireties. See China Healthways Institute, Inc. v. Wang, 491 F.3d 1337, 1340 (Fed. Cir. 2007) ("The word CHI is an integral part of both marks and must be given appropriate weight.")

On appeal, Northland does not disagree with the Board's determination that the goods and services at issue are related and that the channels of trade and classes of customers overlap. Northland instead argues that its mark creates a different commercial impression than that of the '968 mark based on the differences in their overall designs. Northland argues:

> The ['968] mark creates the impression of a community who comes together to grow its own food as a result of the use of an image of a man and a woman tending a garden along with the words "A Community Partnership in Caring." Whereas, . . . [Northland's] mark, when viewed in connection with the manner in which it is used, creates the impression that the food that is placed on one's plate will be of the highest quality due to [Northland's] fastidious supervision of the production cycle from its earliest stage when the food one the plate was merely as seed. Therefore, the differences between the marks, visually, phonetically and connation, support a finding of no likelihood of confusion.

Likelihood of confusion requires consideration of the degree of similarity between the marks including the respective commercial impression; and it is thus not necessary for the commercial impressions to be identical in order to sustain a finding of likelihood of confusion. See In re Research & Trading Corp., 793 F.2d 1276, 1278 (Fed. Cir. 1986) ("The confusion referred to in section 2(d) is that of purchasers in the market place where the marks are used. It is thus not necessary that the goods of the parties be identical in order to sustain a finding of likelihood of confusion.").

In view of the identity of the words of the marks, and the undisputed finding that the marks offer related goods and services and have overlapping channels of trade and customers, reversible error has not been shown in the Board's finding that potential purchasers are likely to be confused. "That the relevant class of buyers may exercise care does not necessarily impose on that class the responsibility of distinguishing between

similar trademarks for similar goods." <u>Research & Trading</u>, 793 F.2d at 1279. ("Human memories even of discriminating purchasers . . . are not infallible.") (citation omitted).

The refusal of registration is affirmed.